**R.V. FONDREN and Doris Fondren, Plaintiffs-Appellees,**

v.

**ALLSTATE INSURANCE COMPANY, Defendant-Appellant.**

No. 85–7544.

United States Court of Appeals, Eleventh Circuit.

June 9, 1986.

Michael B. Beers, Miller & Beers, Montgomery, Ala., Julian P. Hardy, Jr., Yearout, Hardy & Myers, Birmingham, Ala., for defendant-appellant.

Clarence T. Hellums, Jr., Hellums & Meigs, Jack W. Meigs, Centreville, Ala., for plaintiffs-appellees.

Before VANCE and JOHNSON, Circuit Judges, and BOWEN,* District Judge.

VANCE, Circuit Judge:

The seventh amendment provides that "the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law." U.S. Const.amend. VII. The amendment "expresses in clear terms the principle that facts once found by a jury in the context of a civil trial are not to be reweighed and a new trial grant-

* Hon. Dudley H. Bowen, Jr., U.S. District Judge for the Southern District of Georgia, sitting by designation.

ed lightly." *Spurlin v. General Motors Corp.*, 528 F.2d 612, 620 (5th Cir.1976).

In this case, the district court granted plaintiffs a new trial on the ground that the jury's verdict for the defendant was against the great weight of the evidence. The seventh amendment does not, of course, foreclose all scrutiny of a jury's verdict. After reviewing the record before us, however, we conclude that in this case the court improperly substituted its view of the evidence for that of the jury, effectively denying the defendant the protection of the seventh amendment. We reverse.

## I.

Plaintiffs R.V. and Doris Fondren held an insurance policy on their Centreville, Alabama home issued by defendant Allstate. In mid-July 1983, fire gutted the house. The Fondrens attempted to collect on the policy, but Allstate refused to pay. It claims that the Fondrens started the blaze, or at least were responsible for it.

The Fondrens sued, and the case went to trial. Allstate presented evidence in support of its arson theory, including the expert testimony of a private fire investigator, T.D. Capps. The jury was apparently persuaded by the arson defense; it returned a verdict for Allstate. The district judge, however, was not persuaded. He granted the Fondrens' motion for a new trial. He also ruled that at the second trial Allstate would not be permitted to use Capps as an expert witness.

1. Appeal of the new trial grant properly awaited the conclusion of the second trial. *See Massey v. Gulf Oil Corp.*, 508 F.2d 92, 94 (5th Cir.), *cert. denied*, 423 U.S. 838, 96 S.Ct. 67, 46 L.Ed.2d 57 (1975).

2. Allstate also challenges the court's decision not to permit Capps to testify as an expert at the retrial. Our disposition makes it unnecessary for us to consider this issue.

3. We have also noted that in certain circumstances a trial court should grant even greater deference to a jury verdict.

[W]hen the trial involves simple issues [and] highly disputed facts, and there is an absence

At the second trial, the jury found for the Fondrens. Allstate now appeals,[1] arguing that the new trial was improper and that the original verdict should be reinstated.[2]

## II.

### A.

In *Hewitt v. B.F. Goodrich Co.*, 732 F.2d 1554 (11th Cir.1984), we noted that

[a] district court ruling on a motion for a new trial is generally reviewed under an abuse of discretion standard. When the trial court grants a new trial our review is broader and requires a stringent application of the same standard. This is because when the jury verdict is set aside usual deference to the trial judge conflicts with deference to the jury on questions of fact. *When a new trial is granted on the basis that the verdict is against the weight of the evidence our review is particularly stringent to protect the litigant's right to a jury trial.*

*Id.* at 1556 (citations omitted) (emphasis added). The right to trial by jury is also protected by our requirement that "new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great—not merely the greater—weight of the evidence." *Conway v. Chemical Leaman Tank Lines*, 610 F.2d 360, 363 (5th Cir.1980).[3]

In this case the district judge applied the correct legal standard. He concluded that the jury's verdict for Allstate was against

of "pernicious occurrences," trial courts should be considerably less inclined to disturb a jury verdict. Accordingly, review of motions that have been granted in such cases will be more rigorous.

*Williams v. City of Valdosta*, 689 F.2d 964, 974 (11th Cir.1982). The issues in this case are simple and the facts highly in dispute. The only occurrence suggested to be "pernicious" was the testimony of fire inspector Capps. The mere fact that Capps' honesty has been called into question, *see infra* p. 1536, does not suffice to render his testimony a "pernicious occurrence."

the great weight of the evidence. Our review of the record, however, convinces us that the district judge abused his discretion in reaching that decision.

### B.

■ To establish an arson defense under Alabama law, an insurer must " 'prove by competent and relevant evidence arson by someone, motive by the plaintiff and unexplained surrounding circumstantial evidence implicating the plaintiff.' " *Mueller v. Hartford Insurance Co.*, 475 So.2d 554, 557 (Ala.1985) (quoting *Great Southwest Fire Insurance Co. v. Stone*, 402 So.2d 899, 900 (Ala.1981)). The insurer's burden of proof is not particularly heavy. Proof may be made by circumstantial evidence "if the inferences are not too remote and all circumstances, including the inferences, are of sufficient force to bring minds of ordinary intelligence to a persuasion of incendiarism by a fair preponderance of the evidence." *Id.* Proof beyond a reasonable doubt, or proof by direct evidence, is not required.[4]

The evidence of arson presented by Allstate at the first trial was more than adequate to meet this burden.[5] To prove incendiary origin Allstate presented testimony from two fire investigators who found three separate points of origin for the fire and burn patterns indicating use of an accelerant, and who were able to rule out all possible causes other than arson. In addition, carpet samples taken from the house after the fire were found to contain lighter fluid or a similar petroleum distillate. To prove motive Allstate introduced evidence that the Fondrens were in extremely poor financial condition and that they had been planning to move to Mississippi but had been unable to sell their Centreville home. Evidence particularly implicating the Fondrens came largely in the form of testimony from a Centreville police officer. He testified that at about the time of the fire he observed Mr. Fondren in his car sitting by the side of the highway near the house. According to the officer, Mr. Fondren then circled the house in his car several times at five to ten miles per hour. When the officer arrived at the house after speaking with Mr. Fondren he observed Mrs. Fondren walking out of a nearby cornfield. Neither Mr. nor Mrs. Fondren ever attempted to contact the fire department. Testimony from a neighbor put the Fondrens' car or a similar vehicle in their driveway a few hours before the fire, possibly contradicting the Fondrens' testimony that they were away. It was undisputed that the Fondrens were the last to leave the house, had complete access to it, and were nearby when the fire was first observed. There was evidence that they had inflated the value of their lost belongings.

The Fondrens, of course, presented evidence tending to counter that introduced by Allstate. Mr. Fondren's sister testified that the Fondrens were with her in Greensboro, Alabama the evening of the fire, and other evidence was introduced tending to show that the Fondrens did not arrive home until after the fire had begun. The Fondrens suggested that their financial condition was not as dire as Allstate suggested. They pointed out that all their possessions were left in the house, and all were destroyed by the fire. They argued that any unusual behavior at the time of the fire was due to the shock of the loss. The Fondrens themselves requested an arson investigation. Although they present-

---

**4.** In *Mueller* the Alabama Supreme Court also stated that "[t]o sustain the defense of arson, the insurer, when relying on circumstantial proof, must present evidence which is so convincing that it will sustain no other reasonable hypothesis but that the plaintiff was responsible for the fire." *Mueller,* 475 So.2d at 557 (quoting *Stone,* 402 So.2d at 900). This language flatly contradicts the language quoted in text to the effect the evidence need only be of sufficient force to bring ordinary minds to a persuasion of arson by a preponderance of the evidence. We do not believe it to be a correct statement of Alabama law. *See Dempsey v. Auto Owners Insurance Co.,* 717 F.2d 556, 559 (11th Cir.1983) (Alabama law does not require proof of arson beyond a reasonable doubt).

**5.** Although we have considered all the evidence presented at trial, we recite here only the more important evidence.

ed no evidence to suggest any cause of the fire other than arson, they vigorously challenged the evidence suggesting arson presented by Allstate, particularly the testimony of fire investigator T.D. Capps.

The district judge did not elaborate on his decision to grant a new trial, but it appears that the decision may have been based in large part on his view of Capps' testimony. The judge remarked that he found Capps to be "terribly unimpressive" and that he believed Capps had lied to the jury. In this court the Fondrens press this view of Capps' testimony quite vigorously, and even point to evidence suggesting that Capps may have doctored the carpet samples from the Fondrens' house with lighter fluid.

With this serious allegation and the district judge's evaluation before us, we have reviewed Capps' testimony with particular care. We find it to be unobjectionable. It may be that Capps did not conduct the best possible investigation, but the Fondrens had ample opportunity to pursue that possibility in their examination of Capps and to argue the point to the jury. It may be that Capps' demeanor was unimpressive, but credibility is a determination to be made by the jury, not by the district judge, and certainly not by us upon nothing but a reading of the trial transcript. *See Hewitt*, 732 F.2d at 1558–59. It may even be that Capps tampered with the carpet samples, but that is only one possible theory and not the one which carried the day with the jury. It is not our function, nor that of the district court, to substitute one view of the evidence for an equally plausible, if not more plausible, theory which the jury apparently found persuasive.

### III.

We have no doubt that the Fondrens presented a substantial amount of evidence supporting their position. Had the jury found for them, we would be inclined to affirm that verdict. Allstate, however, also presented a substantial case. In our view it is clear that the verdict for Allstate was not against the great weight of the

evidence, and we conclude that the district judge abused his discretion in concluding that it was.

The judgment of the district court is REVERSED and the case is REMANDED with instructions to reinstate the verdict of the original jury and to enter judgment in accordance with that verdict in favor of the defendant.